## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**KENNETH L. DONALDSON,**
            **Plaintiff,**

**v.**                                                    **Case No: 3:08cv386/MCR/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
            **Defendant.**

_____

### REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Donaldson's application for a period of disability and disability insurance benefits under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff Kenneth Donaldson filed an application for benefits claiming an onset of disability as of October 31, 2000. The application was denied initially and on reconsideration, and Mr. Donaldson requested a hearing before an administrative law judge (ALJ). Hearings were held on October 28, 2004, June 14, 2005 and January 8, 2006. Mr. Donaldson testified and was represented by counsel. A vocational expert testified at the June 2005 hearing. On May 26, 2006 the ALJ issued an unfavorable decision, finding that Mr. Donaldson was not disabled. Mr. Donaldson appealed, and on December 2, 2006 the Appeals Council remanded the case for further consideration (tr. 423-26). A hearing was held on October 2, 2007 and the ALJ again found that Mr. Donaldson was not disabled (tr. 16-38). This time the Appeals Council declined review (tr. 8-10). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).

This timely appeal followed.

## FINDINGS OF THE ALJ

The ALJ found that Mr. Donaldson's date last insured was December 31, 2005. Because this claim is based solely on an application for disability benefits under Title II, Mr. Donaldson has the burden of showing that he became disabled no later than that date. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979); *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002) (holding that because the claimant had not shown he was disabled on or before his date last insured, he was not entitled to benefits under Title II).

Relative to the issues raised in this appeal, the ALJ found that Mr. Donaldson met the insured status requirements of the Act through December 31, 2005 (but not

thereafter). The ALJ further found that Mr. Donaldson had severe impairments of (1) status post resection and arthroplasty of the right sternoclavicular joint, (2) degenerative disc disease of the lumbar spine, lumbar stenosis and disk herniation at L4-5, (3) status post L4 and L5 laminectomy, bilateral L4-5 lateral recess decompression and L4-5 diskectomy, but that he did not have an impairment or combination of impairments that met or equaled one of the impairments listed in 20 C. F. R. Part 404, Subpart P; that he had the residual functional capacity to do light work with some postural limitations; that he could not perform the duties of his prior relevant work, which included truck driving and construction; that he was a younger individual with limited education; that through his date last insured he had the residual functional capacity to perform jobs that existed in significant numbers in the national economy; and that he was not disabled as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates

against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1.     Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Although the ALJ found that Mr. Donaldson had several severe conditions, the issue raised on appeal is limited to the difference of opinions concerning his orthopedic and related pain problems. Accordingly, the following extract of the medical record will be limited to those matters.

Mr. Donaldson was injured in a work related accident in October, 2000, in which he injured his back and shoulder while lifting a patient. Over the next several months he was treated conservatively by Dr. Shane Adkison and Dr. Jeffrey Vandermark. On December 5, 2000 Mr. Donaldson reported that he was still having

significant discomfort in his right shoulder but that his low back pain had resolved (tr. 167).

He began treatment with an orthopedic surgeon, Doug Tappan, M.D., in January 2001. His complaint was at the sternoclavicular (SC) joint where the collar bone meets the sternum. On examination there was an obvious subluxation of the joint but x-rays and a CT scan were completely normal (tr. 183-86). In March 2001 Dr. Tappan injected the joint but there was no relief (tr. 182). Mr. Donaldson's problem did not improve and he discussed the possibility of surgery with Dr. Tappan. The doctor was not in favor of surgery because he was not experienced in operating on this particular joint. In July, 2001 Dr. Tappan recommended that Mr. Donaldson seek a second opinion (tr. 180).

In October 2001 Mr. Donaldson started seeing Barry Lurate, M.D., an orthopedic surgeon. On initial examination he had pain in the SC joint and minimal complaints about his back. Dr. Lurate was not anxious to do surgery because he had never operated at the SC joint and the operation was rare. Nevertheless surgery was scheduled for December 2001 but was cancelled because the workers compensation carrier would not approve it (tr. 267-70).

Six months later Mr. Donaldson began seeing Jeffrey Lipke, M.D., a family practitioner. Treatment was generally for coughs, shortness of breath and back and neck pain. A physical examination on July 25, 2002 described a "Muscular male, very stiff in the back." (Tr. 235). There was tenderness in SI joint bilaterally. Paraspinous muscles were tight. Range of motion was reduced in all directions due to pain. The spine was not tender, straight leg raising was negative, leg strength was normal and sensation was grossly intact (*id*.). On August 20, 2002 Dr. Lipke noted that Mr. Donaldson had not gone to physical therapy as ordered, and that no more pain medication could be prescribed if Mr. Donaldson did not follow his recommendations (tr. 234). Dr. Lipke continued to treat Mr. Donaldson

conservatively through March, 2003, primarily for common ailments not related to his neck or back. On March 2003 Dr. Lipke noted that Mr. Donaldson was "very muscular" with no atrophy although there were still complaints of pain in the SC joint (tr. 229). On March 26, 2003 Dr. Lipke noted that he would refer Mr. Donaldson to an orthopedist for several musculoskeletal problems (tr. 225).

Mr. Donaldson returned to Dr. Lurate on May 8, 2003. There was fullness at the SC joint and use of the right arm was limited. Pain at the sacroiliac joint was also present. Mr. Donaldson told Dr. Lurate that he wanted the shoulder problem addressed first (tr. 266). An MRI taken the next day showed a broad based protrusion at L4-5 level with moderate canal narrowing and minor bulging at L5-S1 (tr. 265). Dr. Lurate performed a SC joint arthroplasty on June 2, 2003 (tr. 263-64). Mr. Donaldson returned for follow-up early, complaining of severe pain at the surgery site. He was given Oxycontin for one week, and was told the drug would not be increased or renewed (tr. 262). On June 16, 2003 Dr. Lurate noted that Mr. Donaldson was complaining of pain in the trapezius and the right side of his neck, face and head. Dr. Lurate started that his expectations were guarded, and that Mr. Donaldson had a "rather drastic pain response." (Tr. 261). On June 23, 2003 a hand-written note in Dr. Lurate's record indicated that Mr. Donaldson had called complaining of headaches and pain on the side of his face and wanting different medication. The request was refused and Mr. Donaldson was told he could be referred to another physician, but there was "[n]othing we can do for him." (*Id.*).

Mr. Donaldson returned on July 28, 2003. He now complained of severe pain in his left elbow. The pain at his SC joint was unimproved in spite of the surgery. His low back pain was worse. Dr. Lurate noted that Mr. Donaldson was going to be a "very, very difficult case to manage" and that he was at a loss to explain the intensity of the pain described (tr. 260). Mr. Donaldson called the next day and talked to Dr. Lurate's nurse, saying that the shot in his elbow had made the pain

worse. He wanted oxycontin, which was refused. He then asked to be referred to pain management (tr. 258-59). Mr. Donaldson called a week later and again talked to Dr. Lurate's nurse complaining of the "work status" he had received in the mail. He was "very rude, swearing, yelling & interrupting every time I tried to explain anything." (tr. 260).

Mr. Donaldson began seeing a pain management specialist, David Fairleigh, M.D., on August 19, 2003. Dr. Fairleigh noted a history of "rather dramatic pain response." On physical examination there was considerable tenderness neck, right shoulder and back with restricted range of motion. Motor exam was normal except fo left foot flexion which was 3/5. Senses and reflexes were normal and there was no radicular pain on straight leg raising. Waddell sign was negative. Treatment options were discussed, and Mr. Donaldson indicated he did not want surgery or injections but wanted narcotics. Dr. Fairleigh referred him to his previous physicians who would be better able to deal with his care (tr. 354)

In September 2003, Mr. Donaldson received two epidural pain injections (tr. 346-51). He had another injection in October 2003 (tr. 344-45). In November 2003, Dr. Fairleigh indicated that Mr. Donaldson was in too much pain for rehabilitation treatment, but that he needed to exhaust all conservative relief measures prior to any recommendation for fusion surgery in the back (tr. 343). Mr. Donaldson had another injection in November (tr. 341). In December he was referred to Dr. Lurate for possible surgery. At that time, he was not taking medications (tr. 340).

In March 2004, Dr. Fairleigh performed a lumbar discography (tr. 336-37) and completed a functional capacity evaluation (tr. 339). He opined that Mr. Donaldson could sit for two hours, stand or walk for less than one hour each, never lift any weight, and never carry any weight (tr. 339). Mr. Donaldson had additional postural, environmental, and safety restrictions, and the doctor believed that due to Mr.

Donaldson's pain he would need to "recline at least 3 hours during an 8 hour work period." (Tr. 339).

In April 2004, Charles Wolff, M.D., a neurosurgeon, performed a laminectomy, decompression, and diskectomy (tr. 364-65). Mr. Donaldson was discharged after four days, and was instructed not to bend, lift, twist, or drive (tr. 365). On follow-up, this was amended to a 10 pound limit in May 2004 (tr. 362). Dr. Wolff treated Mr. Donaldson a few times on follow-up through June 2004 (tr. 356-61).

Mr. Donaldson returned to see Dr. Fairleigh in January 2005 because he was out of medications. He was given a trigger point injection for pain relief. Dr. Fairleigh also completed a pain assessment form. He indicated that Mr. Donaldson had persistent, intractable, and incapacitating pain such that bed rest and medication were necessary, and that he had "some" side effects from medications (tr. 389-90).

Six months after his back surgery Mr. Donaldson was seen by Leo Chen, M.D., an orthopedic surgeon, on October 20, 2004, for a consultative examination. Dr. Chen noted Mr. Donaldson's extensive medical history, which included right shoulder pain and surgery on his shoulder in addition to the back surgery. Mr. Donaldson told the doctor that he used a cane to walk. Dr. Chen noted that Mr. Donaldson was on a "significant amount of narcotics and medications to control his pain level." (Tr. 378). Examination disclosed full passive range of motion in all extremities, but a limitation in lumbar flexion. Mr. Donaldson had a little strength reduction in his right arm as well as a grip strength reduction. His strength in the other three limbs was intact. While his gait was "labored" he did not use an assistive device. Dr. Chen assessed chronic lower back pain and right shoulder pain (tr. 379). He opined that Mr. Donaldson would be limited to lifting up to 20 pounds occasionally and up to 10 pounds frequently. There were limitations in using his hands or feet, with only occasional postural limitations. There were no

environmental restrictions and Mr. Donaldson could occasionally reach, push, and pull, and could frequently. In his opinion Mr. Donaldson could sit for three hours at a time and stand or walk for one hour at a time, could sit for six hours total per day and could stand for two hours total per day, and could walk for one hour total per day (tr. 378-84).

Mr. Donaldson was seen on a consultative basis by C.W. Koulisis, M.D., an orthopedic surgeon, on September 19, 2005. Based on his examination Dr. Koulisis assessed "status post L4-5 decompression with residual back pain (neurologically intact)" and "status post resection arthroplasty right sternoclavicular joint." (Tr. 393). He felt that Mr. Donaldson did not have "true lower extremity radiation" and that "objectively he maintains range of motion, is neurologically intact." (Tr. 391-93). Dr. Koulisis completed a functional capacity form in which he opined that Mr. Donaldson was limited to lifting 25 pounds occasionally and 20 pounds frequently and that he had no limitations in the ability to stand or walk, but could not push or pull more than 30 pounds. Dr. Koulisis stated that Mr. Donaldson could frequently perform all postural activities, and had no manipulative or environmental limitations with the exception of a limitation to "limited" vibration (tr. 394-97).

## DISCUSSION

Mr. Donaldson argues that the ALJ erred in disobeying the Appeals Council mandate order when he failed to assign controlling weight to the opinion of Dr. Fairleigh. The Commissioner argues that the remand order was followed, and that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

Mr. Donaldson makes two basic arguments here - that the Appeals Council ordered the ALJ to give controlling weight to Dr. Fairleigh's opinion, which he failed to do, and that in any event the ALJ's decision to give more weight to the opinion of Dr. Chen rather than Dr. Fairleigh was error.

1.    <u>Appeals Council Order.</u>

The following finding from the Appeals Council order is relevant to Mr. Donaldson's position:

> The hearing decision indicates that controlling weight was given to the opinion of consultative examiner Dr. Leo Chen, which is consistent with a limited range of light work (p. 7, paragraph 4; Exhibits 21F and 22F). However, Dr. Chen is not a treating physician; therefore it was inappropriate to assign his opinion controlling weight.

(Tr. 425).  The Appeals Council then included the following direction in its remand:

> [E]valuate the treating and examining source opinions pursuant to the provisions of 20 C. F. R. 404.1527 and Social Security Ruling 96-2p and 95-5p and nonexamining source opinion in accordance with the provisions of 20 C. F. R. 404,1527(f) and Social Security Ruling 96-6p and explain the weight given to such evidence.

(*Id*).

Contrary to Mr. Donaldson's argument, nowhere in the remand order was the ALJ directed to give controlling weight to Dr. Fairleigh's opinion, nor to disregard Dr. Chen's opinion.  He was told that he had erred in giving Dr. Chen's opinion *controlling* weight, and that he had to follow the appropriate regulations in re-examining the various medical source opinions, giving weight to the opinions as the regulations required.  That is what the ALJ did.  There was no error in this regard.

2.    <u>Physician Opinions.</u>

The more appropriate argument here is whether the ALJ erred in giving more weight to the opinion of Dr. Chen, an examining physician, rather than the opinion of Dr. Fairleigh, a treating physician.  Absent good cause, the opinion of a claimant's

treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11ᵗʰ Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11ᵗʰ Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11ᵗʰ Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11ᵗʰ Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11ᵗʰ Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11ᵗʰ Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. See *20 C. F. R. § 404.1527(d)(1)*; *Broughton v. Heckler*, 776 F.2d 960, 962 (11ᵗʰ Cir.

1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005).   However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability.  *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241.   Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Where, as here, subjective complaints of pain is a large component of the claimed disability, the ALJ must properly evaluate the claimed condition.  As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929.  The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[2] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either

---

[1]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

[2]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

(a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as

true.  *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an  explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[3]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,*

---

[3]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Mr. Donaldson argues that the ALJ erred in giving little or no weight to Dr. Fairleigh's opinion because there was much objective evidence of pain, as follows:

1) <u>Lumbar MRI:</u>

Broad based disc protrusion at the L4-L5 level extending slightly caudally moderately narrowing the canal as well as the lateral recesses at the L4-L5 level.
Minor disc bulging at L5-S1. (5/19/2003, R. 355)

2) <u>History</u>

"He was lifting a patient out of a wheelchair when he felt his clavicle pop out. He had extreme pain. He also had lower back pain. He went to Urgent Care Center, was put into a sling, given an injection and medications." (8/19/2003, R. 354)

3) <u>Objective Examination</u>

"Waddell Sign none" (8/19/2003, R. 354)[4]

---

[4]Mr. Donaldson contends that Waddell's testing is used to flesh out possible malingering but he offers no support for this contention. It is true that the test is an aid, but it is not definitive. *See* <u>Nonorganic Physical Signs in Low-Back Pain</u>, Waddell, et.al., *Spine,* vol. 5, 1980 (The test helps clarify the assessment of purely physical pathological conditions); <u>Behavioral Responses to Examination: A Reappraisal of the Interpretation of "Nonorganic Signs"</u>, Main and Waddell, *Spine*, vol. 23, 1998 ("Behavioral signs are not on their own a test of credibility or faking.").

4)  **Actual Conservative Treatment**

   **"He has been refractory to conservative care including physical therapy, home exercises, modalities including TENS unit and medication" (9/9/2003, R. 348)**

5)  **Fairleigh on Lumbar MRI**

   **"radiologic evidence of L4-L5 disc protrusion" (9/16/2003, R. 346)**

6)  **Objective Examination**

   **"illness behavior is appropriate" (12/4/2003, R. 340)**

7)  **Lumbar Discography**

   **"loss of disc space height, moderate anterior fissuring" at L3-L4, L4-L5, and L5-S1." (3/8/2004, R. 337)**

8)  **Lumbar Discography**

   **"Discogenic Pain, Sciatica, Disc Protrusion/Herniation, Lubago" (3/8/2004, R. 377)**

9)  **Dr. Wolff on Lumbar MRI**

   **"found to have foraminal stenosis and facet hypertrophy and a broad based disk herniation L4-L5" (4/28/2004, R. 366)**

10)  **Dr. Wolff on Pain**

   **"He had some improvement after surgery but he is significantly worse now. He really is having very severe low back pain as well as right leg pain." (6/10/2004,   R. 359)**

11)  **Dr. Fairleigh on Pain**

   **"Pain is present and found to be irretractably and virtually incapacitating to this individual" (3/14/2005, R. 389)**

**(Doc. 11, pp. 9-10).**

Were the foregoing the only evidence bearing on Mr. Donaldson's condition, his argument would have force. The x-rays and MRIs provided objective evidence of a medical condition. The rest of the foregoing list is largely subjective. The ALJ was not required to take as fact every "belief" by a doctor that the patient was in pain. Indeed, the ALJ went to considerable lengths in explaining why he did not accept Dr. Fairleigh's opinion. He noted that the greater part of the evidence supporting Mr. Donaldson's claims was subjective. The positive findings on MRI satisfy the first part of the *Hand* test - that there be evidence of an underlying medical condition. The second part of the *Hand* test addresses the subjective part, which requires a showing of either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

The ALJ found that neither of these requirements were met. First, he found that Dr. Fairleigh's own medical records did not support his opinion. When Mr. Donaldson was first seen, Dr. Fairleigh noted a limp but made no objective findings concerning Mr. Donaldson's orthopedic problems, and in spite of Mr. Donaldson's complaints of radiating pain in his leg, electro diagnostic testing was normal. The ALJ noted that physical examinations consistently showed subjective complaints but little in the way of objective findings. Further, the ALJ noted that there were great gaps in Dr. Fairleigh's treatment of Mr. Donaldson. Treatment (mostly injections) was fairly regular between late August and early December, 2004, less than four months, but there was then no treatment until March 2004, a gap of three months when Mr. Donaldson did not see any physician. The ALJ also noted that there had been other significant gaps in treatment. Mr. Donaldson had not seen a doctor from the time his original surgery was cancelled in December 2001 until he began treatment with Dr. Lipke in June, 2002, six months later. There was another six month gap in Dr. Lipke's records, from late September 2002 until early March,

2003.  Finally, from the time Mr. Donaldson last saw Dr. Wolff on June 12, 2004 until his date last insured, eighteen months later, he saw Dr. Fairleigh only once, on January 7, 2005.  Failure to seek treatment can be used as a basis for discounting subjective complaints of pain.  *Watson v. Heckler*, 738 F.2d 1169 (11th Cir. 1984).

The ALJ also noted that in July 2002 and March 2003 Dr. Lipke described Mr. Donaldson as "muscular" and "very muscular."  This was noted to be inconsistent with an individual who is severely, functionally limited.  The ALJ also noted that when Mr. Donaldson finally want to a doctor *after* his last date insured, on February 15, 2006, he told the doctor that he was not taking any medications.  All of this, the ALJ found, undermined Mr. Donaldson's credibility, and credibility determinations concerning the quantum of pain are within the ALJ's "realm of judging" when considered in the light of other evidence.  *Arnold v. Heckler, supra.*

The ALJ also noted repeated references by some physicians concerning the amount of narcotics Mr. Donaldson was taking and, more importantly, demanding, when the doctors felt them to be inappropriate.  That also impacts on credibility.  Some of the treating physicians, and the ALJ, noted that regardless of the surgical procedure performed, Mr. Donaldson always seemed to get worse, and then developed pain in an area not mentioned before, and sought more pain killers.  Finally, the ALJ noted that Mr. Donaldson settled his workers compensation claim in which he netted $42,000 in January 2002 but went for five months after that date before he sought any medical care.  It is not for this court to accept or reject the ALJ's findings on credibility and this court makes no determination on whether Mr. Donaldson's subjective complaints of pain were as bad as he claimed.  Rather, this court must determine whether there was substantial record evidence to support the ALJ's finding that Dr. Fairleigh's opinion was not supported by his own records, which required a credibility determination concerning Mr. Donaldson's subjective

complaints of pain.  The court concludes, from a review of the entire record, that the ALJ's determination was supported by substantial record evidence.

After rejecting the opinion of Dr. Fairleigh, the ALJ then turned to the examination findings of Dr. Chen.  He noted that, unlike Dr. Fairleigh, Dr. Chen was an orthopedic surgeon and a specialist in the relevant areas, and his opinion, while not entitled to controlling weight, would serve as an adequate basis for decision making.  20 C. F. R. §§ 404.1519 and 1527.  The ALJ found that Dr. Chen's disability examination report and opinions were internally consistent and consistent with other objective information in the administrative record.  This determination was also supported by substantial record evidence.

The ALJ was not required to give Dr. Fairleigh's opinion controlling weight.  Neither was he prevented from rejecting Dr. Fairleigh's opinion and giving substantial weight to Dr. Chen's opinion.  The latter is what the ALJ did, it was permitted by the Appeals Council remand and by the regulations, and Mr. Donaldson has not carried his burden of showing the ALJ erred.  He is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 27th day of August, 2009.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO PARTIES**

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).